IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION



LINDA HENDERSON,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL ACTION NO.: 2:16-cv-86

(Case No. 2:14-cr-11)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

More than three years ago, this Court sentenced Linda Henderson ("Henderson") to 132 months' imprisonment following her conviction for conspiracy to possess with intent to distribute fifty grams or more of methamphetamine. Henderson, who is currently incarcerated at the Federal Correctional Institution in Coleman, Florida, has now filed a Motion to Vacate, Set Aside, or Correct her Sentence pursuant to 28 U.S.C. § 2255. (Doc. 78.)[1] Henderson contends that the Court must resentence her following the United States Supreme Court's decision in Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551 (June 26, 2015). (Id.) Johnson invalidated the Armed Career Criminal Act's ("ACCA") residual clause. However, the Court did not rely upon the ACCA, much less the Act's residual clause, in any way during Henderson's sentencing proceedings.

---

[1] The pertinent record documents in this case are filed on the docket of Henderson's criminal case, United States v. Henderson, 2:14-cr-11 (S.D. Ga. April 3, 2014), and many are not included in Henderson's civil docket. Thus, for ease of reference and consistency, the Court cites to Henderson's criminal docket in this Order and Report and Recommendation.

Because Henderson does not raise a valid Johnson claim, she filed her Motion well outside of the one-year statute of limitations of 28 U.S.C. § 2255(f). Thus, I **RECOMMEND** that the Court **DISMISS** Henderson's Motion, (doc. 78), as untimely. Alternatively, to the extent that the Court reaches the merits of Henderson's arguments, it should **DENY** her Motion. Additionally, the Court **DENIES** Henderson's Motion to Address the United States Attorney. (Doc. 77.) Further, I **RECOMMEND** that the Court **DENY** Henderson a Certificate of Appealability and *in forma pauperis* status on appeal and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

On March 3, 2014, a grand jury for this District charged Henderson, in a two-defendant Indictment, with: conspiracy to possess with intent to distribute and to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count One); possession with intent to distribute five grams or more of methamphetamine and the distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts Two and Four); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three). (Doc. 1.) The Government's Penalty Certification stated that Henderson faced not less than ten years nor more than life imprisonment as to Count One; not less than five years nor more than forty years' incarceration as to Counts Two and Four; and a consecutive imprisonment of not less than five years or more than life as to Count Three. (Doc. 2.) The Penalty Certification specifically explained that Henderson's statutory penalties could increase if she had certain prior convictions. (Id.)

However, Henderson and her trial counsel were able to negotiate a plea agreement with the Government whereby Henderson agreed to plead guilty to Court One of the Indictment in

exchange for the Government moving to dismiss the remaining counts. (Doc. 55.) On June 12, 2014, Henderson appeared before the Honorable Lisa Godbey Wood for a change of plea, or Rule 11, hearing. (Doc. 54.) Before accepting Henderson's guilty plea, Judge Wood engaged in an extensive plea colloquy with Henderson to ensure that Henderson fully understood her rights and the charges against her, as well as the maximum penalties associated with those charges, and that Henderson made her decision to plead guilty knowingly, voluntarily, and intentionally.

Prior to Henderson's sentencing hearing, United States Probation Officer Scot Riggs prepared a Pre-Sentence Investigation report ("PSI"). Probation Officer Riggs detailed Henderson's offense conduct and criminal history and calculated Henderson's statutory penalties, as well as her advisory Guidelines' range. Pertinently, when calculating Henderson's offense level, Probation Officer Riggs recommended a two-level enhancement under U.S.S.G § 2D1.1(b)(1), because Henderson possessed several firearms during the instant offense. (PSI, ¶ 33.) When describing Henderson's offense conduct, Probation Officer Riggs detailed her possession of firearms while dealing drugs, including her own admission that firearms were present during drug transactions with various individuals. (Id. at ¶¶ 7, 11, 14, 19, 22, 25, & 30.) Henderson's total offense level of 35, combined with a criminal history category of I, resulted in a recommended Guidelines' sentencing range of 168 to 210 months. (Id. at ¶ 70.) Henderson's counsel did not file any objections to the PSI.

On December 1, 2014, Henderson appeared before Judge Wood for a sentencing hearing. (Doc. 67.) Judge Wood concurred with and adopted the factual statements and conclusions in the PSI and found a Guidelines' range of 168 to 210 months' imprisonment. (Id.) However, the Court granted the Government's motion for a downward departure pursuant to U.S.S.G. § 5K. Thus, Judge Wood sentenced Henderson to 132 months' imprisonment as to Count One.

(Doc. 186.) Pursuant to the plea agreement, Judge Wood dismissed the remaining counts of the Indictment against Henderson. (Id.)

Henderson did not file a direct appeal of her sentence. However, on November 2, 2015, Henderson filed a motion to reduce her sentence due to retroactive changes to the Guidelines. (Doc. 75.) The Court denied this motion, explaining that Henderson was sentenced based on the November 1, 2014, version of the Guidelines, which incorporated the amendments she relied upon in her motion. (Doc. 76.)

In her instant Section 2255 Motion, Henderson argues that the Court must revisit her sentence because the Supreme Court's decision in Johnson should somehow invalidate the two-level enhancement she received under U.S.S.G § 2D1.1(b)(1) for possessing firearms during the instant offense. (Doc. 78.) The Government responded to Henderson's Motion and argues that Henderson failed to explain how Johnson applies to her sentence. (Doc. 82.) Henderson filed a Reply to the Government's Response, as well as a Supplement to her Motion. (Docs. 84, 85.)

## DISCUSSION

**I.   Whether Henderson Timely Filed her Petition**

To determine whether Henderson timely filed her Motion, the Court must look to the applicable statute of limitations period. Motions made pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations period. 28 U.S.C. § 2255(f). This limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

>    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Henderson was sentenced on December 1, 2014, and the Court entered final judgment the next day, December 2, 2014.[2] (Doc. 20.). Henderson had fourteen (14) days, or until December 16, 2014, to file a notice of appeal. Fed. R. App. P. 4(b)(1)(A)(i); Fed. R. Civ. P. 6(a); Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011) (noting that, when a defendant does not appeal his conviction or sentence, the judgment of conviction becomes final when the time for seeking that review expires). Because Henderson did not file an appeal, she had until December 16, 2015, to file a timely Section 2255 motion. 28 U.S.C. § 2255(f)(1). Henderson did not execute her Section 2255 Motion until June 14, 2016, which was nearly six months after the expiration of the applicable statute of limitations period. (Doc. 78.) Consequently, Henderson's Motion is untimely under Section 2255(f)(1).

Henderson does not argue that she is entitled to equitable tolling or to the statute of limitations periods set forth in Sections 2255(f)(2) or (4). Rather, she argues that she timely filed her Motion under Section 2255(f)(3), because Johnson is a new rule of constitutional law made retroactive to cases on collateral review. (Doc. 78, p. 15.)[3] Indeed, in Welch v. United States, ___ U.S. ___, 136 S. Ct. 1257, 1265 (Apr. 18, 2016), the Supreme Court held that Johnson is a

---

[2] Though Henderson moved for and was denied a sentence reduction, her judgment of conviction became final following her original date of conviction. Even if Henderson's motion had been successful, the Eleventh Circuit has held that a "sentence modification does not constitute a new judgment of conviction that restarts § 2255's statute of limitations clock." Murphy v. United States, 634 F.3d 1303, 1309 (11th Cir. 2011).

[3] While Henderson captions her argument "EQUITABLE TOLLED [SIC]," it is clear from the substance of her argument that she relies on Section 2255(f)(3).

5

substantive decision which applies retroactively to cases on collateral review. Thus, if Henderson actually asserted a right newly recognized by the Supreme Court in Johnson, Section 2255(f)(3) could allow Henderson to bring her Section 2255 Motion. However, as discussed in Section II below, Henderson does not bring a cognizable Johnson claim. Because Henderson does not bring a valid Johnson claim, she cannot rely upon Johnson to excuse the untimeliness of her Section 2255 Motion.

For all of these reasons, the Court should **DISMISS** Henderson's Motion as untimely.

## II. Whether Johnson Applies to Henderson's Guidelines' Enhancement

In Johnson, the Supreme Court held that "imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process[.]" ___ U.S. at ___, 135 S. Ct. at 2563. The ACCA provides enhanced penalties for defendants who are (1) convicted of being felons in possession of firearms in violation of 18 U.S.C. § 922(g) and (2) have "three prior convictions . . . for a *violent felony* or a serious drug offense, or both." 18 U.S.C. § 924(e)(1) (emphasis added). The residual clause of the ACCA defines "violent felony" as, *inter alia*, a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court found the "residual clause" so vague as to violate due process. See ___ U.S. at ___, 135 S. Ct. at 2557.

The "crime of violence" definition formerly contained within the Sentencing Guidelines' career offender enhancement provision is identical to the residual clause language found unconstitutional in Johnson. U.S.S.G. § 4B1.2(a)(2) (2004). Despite this similarity, the Supreme Court held in Beckles that the Johnson holding does not apply to the residual clause of the Sentencing Guidelines. In Beckles, the petitioner was arrested for being a felon in possession

6

of a firearm, in violation of 18 U.S.C. § 922(g). "Due to multiple prior felonies, Beckles['] violation of 18 U.S.C. § 922(g) subjected him to the enhanced penalty provision of 18 U.S.C. § 924(e)(1)[,] and the district court found him to be an armed career criminal pursuant to that statute." United States v. Beckles, 565 F.3d 832, 841 (11th Cir. 2009). "This finding, in turn, qualified Beckles for a sentence enhancement under [Section 4B1.4 of the Sentencing Guidelines]." Id. Section 4B1.4 of the Sentencing Guidelines "instructs that the appropriate offense level is . . . [*inter alia*] the offense level described in § 4B1.1, if applicable." Id. at 841–42. "Section 4B1.1, in turn, applies if":

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Id. at p. 842 (citing U.S.S.G. § 4B1.1(a) (emphasis supplied)). The term "crime of violence" previously included "any offense under . . . state law, punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a) (2004). "At [Beckles'] sentencing, the district court found that § 4B1.1 was applicable . . . reasoning that two of Beckles['] prior felony convictions were for qualified controlled substances offenses, and the current 18 U.S.C. § 922(g) conviction [for being a felon in possession of a firearm] was for a 'crime of violence'" Id.

In Beckles' subsequent Section 2255 motion, he "claimed that he was improperly sentenced as a career offender under U.S.S.G. § 4B1.1, [arguing that] his conviction for possession of a sawed-off shotgun was not a 'crime of violence.'" Beckles v. United States, 579 F. App'x 833, 833 (11th Cir. 2014), *vacated*, Beckles, ___ U.S. at ___, 137 S. Ct. at 886. The Eleventh Circuit Court of Appeals denied Beckles' Section 2255 motion, finding Johnson

7

inapplicable to the Sentencing Guidelines. Beckles subsequently filed a petition for certiorari in the United States Supreme Court, again contending that the Sentencing Guidelines' residual clause is void for vagueness under Johnson. The Supreme Court granted certiorari and affirmed the decision of the Eleventh Circuit, holding that "the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine." Id., ___ U.S. at ___, 137 S. Ct. at 896. The Court reasoned that, unlike the ACCA, "[t]he advisory Guidelines [ ] do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement."[4] Id., ___ U.S. at ___, 137 S. Ct. at 894. The Court further distinguished the Guidelines from the ACCA because the ACCA *requires* sentencing courts to increase a defendant's prison term from a statutory maximum of 10 years to a minimum of 15 years, whereas the Guidelines are advisory. Id., ___ U.S. at ___, 137 S. Ct. at 892. Therefore, although the Sentencing Guidelines' residual clause and the ACCA's residual clause are identical, the Sentencing Guidelines are not subject to a void-for-vagueness challenge under Johnson because the Guidelines "merely guide the district courts' discretion[.]" Id., ___ U.S. at ___, 137 S. Ct. at 894.

As laid out above, the Court enhanced Henderson's offense level by two levels due to her having possessed firearms during the offense. As an initial matter, Henderson fails to make any connection between the Guideline that controlled that enhancement, U.S.S.G § 2D1.1(b)(1), and Johnson. Unlike Section 4B1.1, the Guideline at issue in Beckles, Section 2D1.1(b)(1), the Guideline at issue in this case, has no similarity to the ACCA's residual clause. Thus, even if

---

[4] Specifically, the Supreme Court found that "even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range." Beckles, ___ U.S. at ___, 137 S. Ct. at 894. As to arbitrary enforcement, the Guidelines "do not regulate the public by prohibiting any conduct or by 'establishing minimum and maximum penalties for [any] crime.'" Id., ___ U.S. at ___, 137 S. Ct. at 895 (citing Mistretta v. United States, 488 U.S. 361, 396, (1989)). "Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress." Id.

Johnson applied to the Guidelines, it would afford Henderson no relief. Moreover, the Supreme Court's decision in Beckles entirely forecloses Henderson's argument. Under Beckles, Johnson has no applicability to the Guidelines. Therefore, Henderson cannot use Johnson to challenge the Court's Guidelines' calculation.

For all of these reasons, the Court should **DENY** Henderson's claim that Johnson invalidates her Guidelines' offense level enhancement and resulting sentence.

### III.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Henderson leave to appeal *in forma pauperis* and a Certificate of Appealability. Though Henderson has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); see also Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when she seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or

9

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Henderson a Certificate of Appealability, Henderson is advised that she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-

frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** Henderson *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Henderson's Motion, (doc. 42), as untimely.  Alternatively, to the extent that the Court reaches the merits of Henderson's arguments, I **RECOMMEND** the Court **DENY** her Motion.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Henderson a Certificate of Appealability and *in forma pauperis* status on appeal.  The Court **DENIES** Henderson's Motion to Address the United States Attorney.  (Doc. 77.)

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA